moval and his reinstatement, for which services the petitioner agreed to pay the attorney 75 per cent. of the amount that he might recover for the petitioner for the unpaid salary due and payable for such period. The attorney, under this retainer, procured the reinstatement of the petitioner as such police officer, and received as the back salary $4,148. The attorney paid to the petitioner $625, and kept the balance. The petitioner states that, upon his demand for the balance due him, the attorney stated that he was unable to pay at that time, and requested the petitioner to take his notes therefor, amounting in the aggregate to $397, payable three or four months after date, which notes the petitioner accepted and still retains; that, after the maturity of the notes, the petitioner demanded payment from his attorney of the amount thereof, which the attorney neglected and refused to pay, whereupon the petitioner instituted this summary proceeding to compel the attorney to repay him the amount of the notes.

There would seem to be no question but that there is here disclosed a gross violation of duty by the attorney in appropriating a portion of the money that he had collected for his client, and which, even under his 75 per cent. contract, he was bound to pay. When his client demanded payment of that sum, he said that he was unable to pay it. But when the client accepted the attorney's notes for the balance due he changed the relation that existed between himself and his attorney to that of debtor and creditor, and the payment of such an indebtedness should not be enforced by these proceedings. Under this agreement, the attorney was to have a fee of over $3,000 for conducting a proceeding to reinstate a policeman. Such a fee was, to say the least, an extremely liberal compensation for the services rendered, and the fact that the attorney used the balance of the money after he had received it for his own purposes, so that it was "inconvenient" for him to repay it to his client upon demand, would indicate that the attorney was guilty of unprofessional conduct, which deserves severe condemnation. The acceptation by the client of the promissory notes of the attorney for the repayment of the amount, with interest, precludes him from collecting the amount of those notes by this summary proceeding, and he must be left to his action at law to recover the amount due him on the notes.

The order appealed from should therefore be reversed, and the motion denied; but, considering the amount that this attorney has received, and his violation of his duty to his client, the reversal should be without costs. All concur.

---

(70 App. Div. 567.)

## In re KIPP.

(Supreme Court, Appellate Division, First Department.   April 11, 1902.)

1. CLAIMS AGAINST ESTATES—FUNERAL EXPENSES—PROCEDURE FOR COLLECTION.
   Under Code Civ. Proc. § 2727, permitting a creditor of an estate, or one interested in it, to procure the settlement of his claim or interest, and section 2729, as amended by Laws 1901, c. 293, directing an administrator to first pay the intestate's funeral expenses, prescribing the manner of their collection if not paid within a certain time, and re-

quiring the surrogate court to take proof as to the reasonableness of the claim, a claimant for funeral expenses, proceeding for their collection after the taking effect of the amendment, though they were incurred before that time, must adopt the procedure prescribed in the amendment, which merely regulates the proceedings for the collection of such claims.

2. SAME—LAW PRESCRIBING PROCEDURE—CONSTITUTIONALITY—APPEAL—QUESTION NOT RAISED IN COURT BELOW.

The court, on the appeal from an order referring a claim for an intestate's funeral expenses, pursuant to Laws 1901, c. 293, will not consider the constitutionality of such law, the question not having been raised in the court below.

Appeal from surrogate's court, New York county.

Proceedings in the surrogate court by Herman H. Kipp against Henry B. Wesselman, temporary administrator of Charlotte Miller, deceased, for an order directing the payment of the intestate's funeral expenses. From an order referring the matter to a referee to take proof of the claim, the administrator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

B. L. Kraus, for appellant.

P. Cook, for respondent.

VAN BRUNT, P. J. The services were performed and the materials furnished for which this claim is made on or about the 19th of March, 1901, and the claim was presented to the temporary administrator on the 17th of June, 1901; and, pursuant to the authority conferred by section 2729 of the Code of Civil Procedure, as amended by chapter 293 of the Laws of 1901, which went into effect September 1, 1901, the surrogate's court, on the 26th of December, 1901, made the order in question.

It is objected by the appellant that the holder of a claim for funeral expenses is not a creditor, nor a person interested in the estate, within the meaning of those terms as used in section 2727 of the Code; and that, as the amendment to section 2729, constituting subdivision 3 thereof, went into effect on September 1, 1901, it is not applicable to the matter at bar, as the claim accrued before the amendment became operative. It seems to be sufficient to say upon this point that the amendment of section 2729 was a mere regulation of procedure; and it is a well-settled rule that, no matter when a claim may mature, the form of procedure provided for by the law for its collection at the time the proceeding for collection is commenced must be the one adopted, and consequently the claimant was required, at the time at which he presented his application, to proceed in the manner then provided by the law for enforcing its collection.

It is further claimed that chapter 293 of the Laws of 1901, constituting subdivision 3 of section 2729 of the Code, is in violation of the constitutional provision that trial by jury in all cases in which it has been heretofore used shall remain inviolate forever. It is not necessary to discuss this question upon this application, for the reason that it does not appear that any such objection was taken in the court below. If the party desired to avail himself of an objection of this kind, he was bound to do so before the court entered upon the

disposition of the case, as provided for by subdivision 3 of section 2729. It is too late to raise that question for the first time upon appeal from the order which was made pursuant to the provisions of that section.

The order should be affirmed, with $10 costs and disbursements. All concur.

---

## PEOPLE v. MOST.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

**1. PUBLISHING ANARCHISTIC DOCTRINES—INCITING TO MURDER— CRIMINAL LIABILITY.**

Pen. Code, § 675, providing that a person who willfully and wrongfully commits any act which seriously endangers the public peace, for which no other punishment is expressly provided, shall be guilty of a misdemeanor, authorized the punishment of the editor of a small anarchistic paper, who published therein an article entitled "Murder vs. Murder," characterizing government as "nothing more than murder dominion," and calling on anarchists "to execute the judgment" by killing "through blood and iron and poison and dynamite" the heads of nations, etc.

**2. SAME—LIBERTY OF PRESS—CONSTITUTIONAL GUARANTY—EFFECT.**

Const. art. 1, § 8, providing that "every citizen may freely speak, write, and publish his sentiments upon all subjects, being responsible for the abuse of that right, and no law shall be passed to refrain or abridge the liberty of speech or the press," does not authorize a citizen to publish articles inciting others to murder, etc.

**3. SAME—REPUBLICATION—LIABILITY.**

The fact that defendant was not himself the original author of the publication, it having been first published 50 years before, and that he merely republished it, did not relieve him from criminal liability where he approved the sentiments contained in it, as, by stating at the beginning of the article, "As * * * said nearly 50 years ago (this is true even to-day)," etc.

Appeal from court of special sessions of city of New York.

John Most was convicted of a misdemeanor under Pen. Code, § 675 (see 73 N. Y. Supp. 220), and appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Maurice Hillquit, for appellant.
Robert C. Taylor, for the People.

McLAUGHLIN, J. Section 675 of the Penal Code provides, among other things, that a person who willfully and wrongfully commits any act which seriously endangers the public peace, for which no other punishment is expressly provided, is guilty of a misdemeanor. The defendant was tried, convicted, and sentenced to be imprisoned in the penitentiary for the term of one year for a violation of this provision of that section. He published, in the city of New York, in the German language, a newspaper called The Freiheit, which had a total circulation of about 3,000,—not exclusively in the United States, but in Germany, Austria, Switzerland, and other European countries. In the issue of this paper of the 7th of September, 1901, appeared an article entitled "Murder